IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAVIS D. WILLIAMS,

                Plaintiff,                              OPINION AND ORDER

    v.

                                                               16-cv-474-wmc

DR. SALAM SYED, et al.,

                Defendants.

---

      Plaintiff Travis D. Williams, who is currently incarcerated at the Wisconsin Secure Program Facility ("WSPF") is proceeding against defendants, all employees at Columbia Correctional Institution ("Columbia"), where Williams was incarcerated previously, on First, Eighth and Fourteenth Amendment claims related to his medical care and placement within the prison. Williams has filed a motion to compel (dkt. #43), lodging numerous complaints about defendants' discovery requests. For the reasons that follow, I am granting in part and denying in part this motion.

      Williams claims that defendants' responses to his first two sets of discovery requests have been inadequate and he seeks the requested documents as well as sanctions. I will begin with two points: First, I am not going to sanction defense counsel. Williams accuses defense counsel of lying in the discovery responses, but he has presented no evidence in support, so I will not address these assertions further. Second, Williams generally takes issue with defendants' objections to many of Williams' discovery requests as unduly burdensome, overbroad and vague, but these objections were reasonable. Indeed, many of Williams's requests seek documents that span from 2015 to 2018, and do not explain how

the documents are related to his particular claims against the defendants in this lawsuit. Williams's claims in this lawsuit relate only to the events that took place while he was incarcerated at CCI. Since Williams left CCI in April of 2017, I generally agree that Williams' records from WSPF are not relevant to his claims in this lawsuit.

As for Williams' specific complaints, he points out that defendants declined to respond to his first set of discovery requests, which is true. Williams served discovery requests prior to the court's scheduling conference, so defense counsel responded that, in accordance with Federal Rule of Civil Procedure 26(d), defendants would respond within 30 days of the scheduling conference. (*See* Pl. Ex. 1 (dkt. 44-1).) That response was not improper and in any event, any complaint about it is moot since defendants timely responded to Williams' second requests for production.

Williams also complains about defendants' response to his second set of requests for documents, which I will walk through by request:

**Request No. 1, requesting video footage from CCI from May 25, 2016, July 2016 (showing that defendant nurse DeYoung flicked him off), and October 3 2016.**

Defendants objected to the request as vague and confusing, but also responded that "there is no video footage of Plaintiff from October 3, 2016 or May 25, 2016." (Pl. Ex. 2 (dkt. 44-2) at 1.) Williams might be frustrated that defendants were unable to produce video evidence, but he has not submitted any evidence suggesting that the video footage from those days and that incident actually exists, much less that defendants are improperly withholding it.

**Request No. 3, requesting incident report 2016-237734 of the October 3 2016 incident of Plaintiff flipping over his walker.**

Defendants produced that incident report, but Williams now complains that defendants did not product other incident reports as well. Defendants were only obliged to produce the incident report that Williams requested, and they did so. If Williams wants another report, he must request it separately.

**Request No. 4, seeking DOC 1008 unit area pass logs from May 5th 2015 through May 2017, and WSPF pass logs from May 2017 through 2018.**

Defendants objected to this request as overly broad and not proportional to the needs of the case, since Williams was allowed to proceed on events that took place when Williams was incarcerated at CCI, not WSPF. Defendants further responded that there were no documents from CCI that would be responsive, representing that CCI does not retain unit pass logs. In reply, Williams insists he needs the logs so that he can identify the dates he was scheduled for appointments, by provider. Defendants cannot produce what they do not possess. As such, since defendants have provided Williams a copy of his medical records, Williams should review those materials for the information he seeks about his appointments.[1]

---

[1] Defendants also note in their discovery response that Williams' refusal to authorize a release of his medical records made responding to Williams' requests impossible. However, since that time Williams has signed a medical records authorization.

**Requests 5 and 6, seeking Williams' medical and mental health files from WSPF, from March 2015 through 2018.**

Defendants initially objected to these requests because Williams had not signed a medical release that granted defendants access to his medical and mental health records. After Williams signed the authorization defendants provided Williams a copy of his records. Accordingly, this issue is moot.


**Requests 7-10 seek all of Williams' complaints he filed at CCI and WSPF from May 5, 2015, through July 2017; DOC 660 forms of CCI unit absence records from March 2015 through 2017; Interview/Information Request Forms Williams submitted from March 2015 through May 2017; and behavior logs from May 2015 through May 2018.**

Defendants objected to each request as overbroad, specifying that anything that occurred after his transfer to WSPF in April of 2017 is irrelevant to his care at CCI. Defendants further objected on the ground that Williams would have copies of many of these documents, so requiring defendants to produce them would be unduly burdensome. Defendants then pointed out that Williams could obtain copies of his inmate complaints by submitting a disbursement request to the Institution Complaint Examiner's office at WSPF. For his part, Williams represents that he has lost his copies of his interview requests, but Williams has not reported whether he has attempted to obtain copies of his inmate complaints; instead, he claims that he needs his inmate complaints to prove that he properly exhausted his claims in this lawsuit, and he needs Conduct Report #2708318 to prove his claims.

Defendants' objection about the time frame of the documents Williams is requesting is well-taken, so I agree that defendants do not need to turn over any documents

responsive to these requests after his transfer to WSPF. I also agree that Williams' request for copies of all of these other forms would be unduly burdensome for defendants to produce, especially since Williams's filings indicate that he does, in fact, possess many of these documents. Moreover, Williams does not attempt to tie any of these documents to any of the defendants he is proceedings against, and so it is not apparent that the information he is seeking relates to his claims. To the extent Williams can narrow the focus of his requests to specific time frames outlined in his amended complaint, or related to particular defendants, he may renew these requests for documents.

As for his inmate complaints, however, Williams's request for copies of his handwritten inmate complaints is reasonable, since these documents would be relevant to defendants' affirmative defense that Williams failed to exhaust his administrative remedies. That said, it is not apparent that Williams does not possess copies of those documents, and it is not clear that he actually needs them, since defendants may not actually move for summary judgment on exhaustion. In the event that defendants move for summary judgment on the ground that Williams failed to exhaust his administrative remedies, they should provide Williams copies of the relevant inmate complaints at that point. For now, I agree with defendants that Williams's request for all of his inmate complaints is an unduly burdensome request.

Finally, as for Williams's request for a copy of Conduct Report #2708318, since it does not appear he had requested it previously, there is no basis for me to compel defendants to produce it. If Williams wants defendants to produce Conduct Report #2708318, then he should ask for it in a proper discovery request.

5

**Request 11, seeking DAI Policies.**

Defendants represent that although they initially objected to producing these materials because they are available to Williams, they since have provided him with the policies. This issue is moot.

**Request 12, seeking DOC 9 forms from March 2015 through May 2017.**

Defendants objected on overbreadth grounds, but nonetheless produced Williams's DOC-120 Face Card. In reply, Williams claims that he needs different forms, but he does not contest that defendants complied with Request 12. Accordingly, I am satisfied defendants complied with this request. If Williams needs additional forms, then he should consider whether they are actually relevant to his claims, and then, if so, serve defendants with an additional document request.

**Request 13, seeking DAI policy 500.80.05.**

Defendants responded by providing Williams a copy of the policy, so this issue is moot.

**Request 14, seeking copies of various types of DOC forms from March 2015 through 2018.**

Defendants objected to the request as overly broad, but also referred Williams to previously produced documents and wrote that if Williams narrowed his request to a specific date or occurrence, then defendants could provide a more substantive response.

Defendants' objection is well-taken. Williams cannot simply provide a laundry list of documents he is seeking without providing any connection to his claims in this lawsuit.

**Request 15, seeking work order for cell 50.**

Defendants produced the work orders for cell 50, so this issue is moot.

**Request 16, seeking verification of license for various medical health care professionals.**

Defendants provided supplemental discovery to Williams, this issue is also moot.

**Requests 17-21, requesting additional types of medical records.**

Defendants responded that they are providing Williams a copy of his medical records, so this issue is moot.

**Requests 23-27, requesting various DOC memoranda, Williams' PREA tenets score, names of medical contractors, medication logs from CCI, disciplinary reports against defendant Dr. Syed.**

Defendants objected to the request for memoranda and the names of medical contractors and medication logs on the grounds that the requests were overly vague, burdensome and beyond the needs of the case; that Williams is not proceeding on a PREA-related claim; and that Dr. Syed's disciplinary reports are confidential employment records and are only relevant insofar as they could be use for impeachment purposes, so Williams could renew that request if he proceeds to trial. Despite their objections, defendants did produce certain memoranda directed toward Williams.

7

In reply, Williams complains that he needs information about third parties with whom the DOC contracts so that he may supplement his claims. "Discovery is not to be used as a fishing expedition." *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 637 (7th Cir. 2012) (quoting *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996)). As for Dr. Syed's disciplinary records, Williams claims that he needs them to prove that Dr. Syed would walk out of his appointments, which would indicated that he handled his care with deliberate indifference. To the extent there are disciplinary records related to an incident that took place between Dr. Syed and Williams specifically, I agree that such documents are relevant to Williams's claims against him and will require defendants to produce them. However, Williams is not entitled to any other information about Dr. Syed's disciplinary record prior to trial. Such records would not be relevant to Williams' deliberate indifference and negligence claims against him, unless Williams can frame a request that ties such records more directly to what he intends to prove in this case. Accordingly, defendants will be required to turn over any of Dr. Syed's disciplinary records that reflect interactions between him and Williams, but all of Williams' remaining requests are denied.

ORDER

IT IS ORDERED that plaintiff Travis Williams' motion to compel (dkt. #43) is GRANTED in part and DENIED in part. It is GRANTED insofar as defendants are directed to produce any disciplinary records related to Dr. Syed's interactions with Williams. The motion is DENIED in all other respects.

Entered this 8th day of April, 2019.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge