IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAVIS D. WILLIAMS,

                Plaintiff,                      OPINION AND ORDER

   v.

                                           16-cv-474-wmc

DR. SALAM SYED, et al.,

                Defendants.

---

*Pro se* plaintiff Travis D. Williams is currently incarcerated by the Wisconsin Department of Corrections ("DOC") at the Wisconsin Secure Program Facility ("WSPF"). Williams' grievances over his conditions of confinement by the DOC are numerous, and when he initially filed this 42 U.S.C. § 1983 lawsuit, he included claims arising from events that occurred at three different DOC institutions, as well as multiple private institutions. (*See* dkt. #23.) After the court explained that his complaint violated Federal Rule of Civil Procedure 20, Williams pared down his claims to events that occurred during Williams' incarceration at Columbia Correctional Institution ("Columbia") between May 5, 2015, and April of 2017, which still included claims that over two dozen Columbia employees violated his federal constitutional and state law rights in handling his various medical and mental health conditions, as well as subjected him to inhumane conditions of confinement.

Ultimately, the court granted Williams leave to proceed on claims under the First, Eighth and Fourteenth Amendments, as well as state law claims, against some 27 Columbia officials. More specifically, Williams was granted leave to challenge: the decision not to place him in a unit specified for inmates with mental health conditions, which he claims

was racially motivated; the decision denying him access to a wheelchair or medical shoes necessary to address his painful hip, foot and ankle conditions; the treatment of a nose sore; various defendants' refusal to prevent him from falling, then failure to treat him after he fell; the failure to address urine leaking into his cell; and multiple defendants' retaliatory refusal to provide him appropriate medical or mental health care.

This opinion and order resolves defendants' motion for sanctions (dkt. #145). The court finds that Williams attested that his submissions in opposition to defendants' motion for summary judgment were timely, but actually filed them five days late, but the court will neither dismiss his lawsuit nor strike those submissions from the record of this case. Instead, the court warns Williams that should he again fail in his obligation of candor to this court again as to any matter large or small, whether in this case or another case before this court, then it will not hesitate to impose sanctions, up and including dismissal of this *and* some or all of his other lawsuits. In addition, defendants may, should they wish, have fourteen days to file a reply to plaintiff's untimely response to their motions for summary judgment. At that point, the record on the parties' dispositive cross-motions will be closed, and the court will take up Williams' Eighth, First or Fourteenth Amendment claims promptly.

OPINION

"A district court has inherent power to sanction a party who 'had willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). The party seeking sanctions has the burden to

2

prove the grounds for its award by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-81 (7th Cir. 2016). Here, defendants seek sanctions because Williams misrepresented the date that he submitted his opposition to defendants' motion for summary judgment -- actually filing his materials four days beyond his opposition deadline, having already obtained an extension of the deadline from the court. Worse, Williams appears to have intentionally backdated his certificate of service to make it look like he complied with this extended deadline. As a sanction, defendants understandably ask that the court dismiss Williams' claims against defendants altogether; or in the alternative, they ask that the court strike Williams' filings in opposition to defendants' motion for summary judgment (dkt. ##141-144), and resolve defendants' motion without considering his opposition. Were the effects of these sanctions not so draconian (or at least potentially so) when compared to only a *four-day* delay in delivery of his opposition, and the plaintiff not proceeding *pro se*, this court might well have granted at least the latter sanction. As it stands, Williams will instead receive sanctions in the form of a warning, and defendants will be allowed to file a reply to his untimely opposition.

### A. Factual Findings[1]

On June 24, 2019, Williams filed a motion for summary judgment, and on July 31, defendants filed their combined opposition to Williams' motion for summary judgment,

---

[1] After review of the parties' submissions and the video footage submitted by defendants, the court sees no reason to hold an evidentiary hearing to resolve defendants' motion. *See Peacher v. Talbot*, 840 F. App'x 37, 39 (7th Cir. 2021) (evidentiary hearing on motion for sanctions under Federal Rule of Civil Procedure 11 did not require an evidentiary hearing when court's decision did not rely

3

as well as a cross-motion for summary judgment. The court then set Williams' response deadline for September 3, 2019. However, Williams filed a motion on August 20, representing that after being placed on a paper restriction, he had temporarily lost access to his legal papers and seeking an extension of time to oppose defendants' cross-motion for summary judgment. Based on that representation, the court granted Williams an extension of the September 3, 2019, opposition deadline, setting September 6, 2019, as his new deadline to account for the loss of his paperwork. (Dkt. #134.)[2]

The court did not receive a filing from Williams on September 6. Instead, on September 11, five days after his deadline, Williams filed his combined opposition to defendants' motion for summary judgment and reply to his motion for summary judgment. (Dkt. ##141-144.) While these submissions were electronically filed with the court, Williams wrote on his certificate of service: "On September 5th 2019 I placed outside my cell door on Alpha Unit one large white envelope with one hundred & sixty exhibits." (Dkt. #141-1.) Williams also signed the certificate of service, dating it September 5, 2019. (*Id.*)

Defendants claim that Williams did not actually submit these materials outside his cell on September 5. In support, they submit a declaration of WSPF's Litigation Coordinator Ellen Ray, as well as Exhibits 1022, 1023, and 1024, which is the video footage of the area outside of Williams cell. Ray attests that she "reviewed video footage

---

on testimony in resolving motion) (citing *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 360 (7th Cir. 2014)).

[2] The next day, the court received a renewed motion for Williams, but since that motion crossed in the mail with the court's August 27, text only order, the court took no action on that motion.

4

from September 5, 2019," which showed "that Williams pushed a single piece of paper outside his cell door on that date." (Ray Decl. (dkt. #147) ¶ 5.) Exhibit 1022 contains video footage from outside Williams' cell on September 5, 2019. The portion defendants submit also shows Williams pushing one piece of paper outside his cell door at about 9:00 p.m. that day. (Ex. 1022, at 21:01.)

Ray further attests that she reviewed the video footage from September 10, 2019. (Ray Decl. (dkt. #147) ¶ 6.) Exhibit 1023 is footage from the outside of Williams' cell from September 10, which shows that he placed a large white envelope outside his cell that day. (Ex. 1023, at 17:48:05-17:48:21.) Exhibit 1024 is footage from outside of Williams cell later on September 10. That footage shows that an officer picked up the materials on September 10 as well. (Ex. 1024, at 22:13:50-22:14:54.)

While Williams asks that the court exclude the video footage from consideration (dkt. ##155, 157), arguing that it is irrelevant, unauthenticated, and improper character evidence, and that Ray's statements are hearsay,[3] the video footage is obviously relevant to defendants' motion, and since Ray attests that she reviewed the footage, it meets the low threshold for authentication. *See* Fed. R. Evid. 901(a). The video footage is also not improper character evidence, rather, it shows that Williams did *not* submit his filings on September 5 as he falsely represented to the court in his certificate of service, but instead did so on September 10, five days later. As for Ray's declaration, since this is a pre-trial issue, her sworn written statement is an appropriate substitute for her oral testimony.

---

[3] Williams also attacks the character of WSPF staff members, referring to them as "professional crooks" and suggesting that they were responsible for his delayed filings. This unsupported accusation will not be addressed or credited.

Williams further maintains that the footage should be excluded because defendants submitted only cherry-picked snippets of the footage from September 5 and 10. Williams maintains this is significant because he did not lie about submitting his materials for filing on September 5. Instead, he doubles down by claiming that on September 5, he had asked a guard to place his envelope containing his summary judgment materials in the outgoing mail bin, because his vestibule cellmate was "fed up" with how dirty the vestibule floor was that day. Williams further represents that some five days later, when he was out of his cell for a haircut, he noticed the envelope still sitting in the outgoing mail bin (Williams Decl. (dkt. #158) ¶ 27.) Williams then claims that having asked a guard to hand him back the envelope, he took it back to his cell, only to ask another guard, Sergeant Schneider, to come and get his legal mail, which he resubmitted for filing that day. (*Id.* ¶¶ 24, 25.) Williams also claims to have told Schneider at the time that he "thought 3rd shift Officer Ellerson did not process" his mail because he filed a lawsuit against him. (*Id.* ¶ 25.)

Williams' elaborate explanation strains credulity. Williams does not identify the officer that he allegedly asked to put his envelope in the outgoing mail bin on September 5, nor what time this exchange took place. Although Williams suggests that yet another guard named Ellison may have caused his envelope to be left in the outgoing mail bin, rather then be processed timely, this speculation does not begin to explain how the envelope managed to stay in the outgoing mail bin for five more days despite being collected every day. Beyond stating that Ellerson was a third shift officer, Williams provides no details about Ellerson working later on September 5, much less that he was the *only* WSPF staff member responsible for collecting outgoing mail from September 5

6

through September 10, 2019. Williams appears to claim that staff at Columbia and WSPF frequently tamper with and delay his filings, but such a delay does not appear to have happened at any other occasion in this lawsuit and wholly fails to account for the five-day delay between September 5 and 10.

Williams' explanation of what happened on September 10 makes even less sense. Williams does not explain *why* he chose to retrieve the large envelope and bring it back to his cell, as opposed to asking the guard transporting him to immediately submit it for filing, a much more obvious and efficient choice given the passage of time. Worse, once Williams possessed the envelope, he essentially acknowledges making no effort to correct his submissions to the court as to what had happened or, at the very least, update the certificate of filing to represent the actual filing date was September 10, much less explain to the court what happened on the actual filing date. Given that WSPF is an e-filing institution, there is also no reason to infer that Williams would be hesitant to break the seal (or otherwise disturb the mail). Ironically, had he done that (or even just sought 4 additional days to file), the court would almost as certainly granted a four-day delay, having previously granted a longer extension, but now the court is stuck with someone who appears to have lied, and even after being caught in an apparent lie, he is still dissembling.

Typically, when there is a material, factual dispute related to a motion for sanctions, the court would hold a hearing to resolve those disputes, but a hearing is unnecessary here. The court need not find that Williams affirmatively lied to the court about the date of his submission of opposition materials, since even taking Williams' story to be true, there is *no* dispute that he failed to apprise the court of the reason for missing his deadline, but

7

rather consciously left late filings on September 10 as they were on September 5. This may seem like a trivial omission, but in the context of Williams' own, extremely detailed and aggressive filings in this case, it is all too familiar. Indeed, in the weeks leading up to Williams' opposition deadline, he had submitted multiple, detailed motions, urgently seeking extensions of time to file his opposition, attaching declarations and evidence in support. (*See* dkt. ##128, 129, 129-1, 130, 135, 136, 136-1.) Under the circumstances, therefore, defendants are justified in pointing out that Williams failed to explain, *or even acknowledge*, the five-day delay between when he intended to file his opposition materials and when he actually filed them. Instead, only when faced with defendants' motion for sanctions did Williams do so, garnering evidence and preparing a lengthy brief in the process. The obvious inference the court must draw from Williams' September 10 omission is that he intentionally failed to alert the court to his tardy filing, and hoped that the court might overlook and accept his late filing.

B. Analysis

Finding that Williams intentionally omitted the fact of his late filing, the court turns to the appropriate sanction. "Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Id.* However, district courts are required to "consider other sanctions before resorting to dismissal." *Rivera v. Drake*, 767 F.3d 685, 786 (7th Cir. 2014); *see also Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) ("[S]anctions, including dismissal, must be proportionate to the circumstances. Considerations relevant to proportionality include the

extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case.").

In these circumstances, the lesser sanction of striking Williams' untimely filings received by the court on September 11, 2019, is arguably proportionate with his misconduct. First, Williams is indigent, proceeding *in forma pauperis* in this and his other lawsuits, so it is unlikely that imposing a monetary sanction will have any deterrent effect. *See Secrease*, 800 F.3d at 402 ("[T]he threat of a monetary sanction would probably not influence" the behavior of a litigant proceeding *in forma pauperis.*) (citing *Rivera*, 77 F.3d at 687). Second, dismissal likely goes too far. As defendants point out, the Seventh Circuit has approved the decision to dismiss a case with prejudice for "lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary." *Ayoubi v. Dart*, 640 F. App'x 524, 528-29 (7th Cir. 2016). Nonetheless, Williams' omission here was equal parts dishonest and ill-advised, since the court would likely have allowed such a short extension, if asked. Third, defendants' alternative, proposed sanction -- striking Williams' filings received on September 11 -- is a more direct and measured response to his misconduct.

For one, Williams' submissions were untimely, so the court is on solid ground to exclude them from consideration for that reason alone. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (district court properly excluded delayed summary judgment filings); *see also Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 539 (7th Cir. 2017) ("Sanctions for missing a deadline by one day certainly are not mandatory, but neither are they prohibited given the wide latitude district courts have in such matters."). Moreover,

9

this sanction is commensurate with plaintiff's misconduct, since it would deny Williams the benefit of his untimely submissions, while still preserving his claims. In particular, the court would be striking his untimely filing, while considering Williams' timely-filed, proposed findings of fact and brief in support of his own motion for summary judgment. Given that Williams is a frequent filer in this court, that sanction hopefully would deter any future instinct to misrepresent facts or otherwise mislead the court, rather than make truthful, candid and careful submissions.[4]

However, imposing such a sanction here might end up (1) being dispositive as to the merits of plaintiff's federal claims *and* (2) encourage the DOC and its institutions (or at least its employees) to take extraordinary efforts to preserve video and document filing dates over an otherwise minor, four-day delay, which is even more striking for DOC's repeated denial of its ability to do the same in other situations that might prove helpful to a *pro se* plaintiff.

Accordingly, the court will grant defendants' motion for sanctions and impose the sanction set forth below, but defendants may still reply to Williams's materials filed in opposition to defendants' motion for summary judgment (dkt. ##141, 142, 143, 144). Once received (or the fourteen days have elapsed, the court will take up the parties' cross motions for summary judgment.

---

[4] Williams has five other lawsuits before this court: *Williams v. Hoem*, No. 19-cv-944-wmc; *Williams v. Delforge*, No. 20-cv-426-wmc; *Williams v. Kinyon*, No. 20-cv-1021-wmc; *Williams v. Friedrich*, No. 21-cv-172-wmc; and *Williams v. McArdle*, No. 21-cv-173-wmc.

ORDER

IT IS ORDERED that defendants' motion for sanctions (dkt. #145) is GRANTED and Travis Williams is warned that, **going forward, any further misrepresentation or lack of candor to this court as to any matter large or small, whether in this case or another case before this court, will result in sanctions, up to and including dismissal of this *and* some or all of his other lawsuits.** Should they wish, defendants may also have until July 6, 2021, to file a reply to plaintiff's untimely response.

Entered this 21st day of June, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge